1 | Larry W. Gabriel– State Bar No. 68329
Robyn B. Sokol Gabriel– State Bar No. 159506
2 | **EZRA BRUTZKUS GUBNER LLP**
21650 Oxnard Street, Suite 500
3 | Woodland Hills, California  91367
Telephone:  (818) 827-9000
4 | Facsimile:   (818) 827-9099

5 | Attorneys for the Official Committee of
Unsecured Creditors for Estate Financial,
6 | Mortgage Fund, LLC

7 | Peter Susi – State Bar No. 62957
**MICHAELSON, SUSI & MICHEALSON**
8 | A Professional Corporation
Attorneys at Law
9 | Seven West Figueroa Street, Second Floor
Santa Barbara, California 93101
10 | Telephone (805)965-1011
Facsmile:  (805) 965-7351
11 |
Attorneys for Official Equity Committee
12 | For Estate Financial Mortgage Fund, LLC

13 | 

**UNITED STATES BANKRUPTCY COURT**

14 |
**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

15 | 

16 |

| | |
|---|---|
| In re | Case No. 9:08-bk-11535-RR |
| | Case No. 9:08-bk-11457-RR |
| **ESTATE FINANCIAL, MORTGAGE FUND, LLC, a California limited liability company,** | Chapter 11 |
| Debtor. | **JOINT MOTION OF THE COMMITTEES FOR ORDER AUTHORIZING REIMBURSEMENT OF EXPENSES OF THE COMMITTEES ARISING FROM PREMIUMS ASSOCIATED WITH ERRORS AND OMISSION INSURANCE POLICIES FOR THE COMMITTEES; DECLARATIONS IN SUPPORT THEREOF** |
| In re | |
| **ESTATE FINANCIAL, INC.,** | |
| Debtor. | Date:   March 25, 2009 |
| | Time:  2:00 p.m. |
| | Place:  Courtroom 201 |
| | 1415 State Street |
| | Santa Barbara, CA 93101 |

1

1  TO THE HONORABLE ROBYN L. RIBLET, UNITED STATES BANKRUPTCY JUDGE,

2  BRADLEY SHARP, CHAPTER 11 TRUSTEE FOR ESTATE FINANCIAL MORTGAGE

3  FUND, LLC, THOMAS JEREMIASSEN, CHAPTER 11 TRUSTEE FOR ESTATE

4  FINANCIAL, INC., ESTATE FINANCIAL MORTGAGE FUND, ESTATE FINANCIAL, INC.

5  AND PARTIES IN INTEREST:

6         The Official Committee of Unsecured Creditors for Estate Financial, Inc. (the "EFI

7  Committee") jointly with the Official Equity Committee for Estate Financial Mortgage Fund,

8  LLC ("Fund Committee," and jointly referred to as the "Committees") hereby move for an order

9  authorizing the reimbursement and payment of the amount incurred and the balance due in

10  connection with the acquisition of errors and omissions insurance policies for the members of the

11  Committees.  In support of its motion, the Committees submit the following points and

12  authorities.

13

14                    **MEMORANDUM OF POINTS AND AUTHORITIES**

15

16                                            **I.**

17                                **STATEMENT OF FACTS**

18         On June 25, 2008, an involuntary petition was filed against Estate Financial, Inc. thereby

19  commencing the Estate Financial, Inc. ("EFI") bankruptcy case ("EFI Case").  EFI filed its

20  Consent for Entry of Voluntary Order for Relief on or about July 11, 2008.  On July 16, 2008, an

21  Order was entered converting the EFI Case to a voluntary case under chapter 11 of Title 11 of

22  the United States Bankruptcy Code.  Thereafter, on July 25, 2008, Thomas P. Jeremiassen (the

23  "EFI Trustee") was appointed as Chapter 11 Trustee in the EFI Case.   On July 30, 2008, the

24  Trustee accepted his appointment as Chapter 11 Trustee.

25         Estate Financial Mortgage Fund, LLC ("Fund") commenced its case by the filing of a

26  voluntary petition under Chapter 11 of the Bankruptcy Code on July 1, 2008.  The filing

27  followed an involuntary Chapter 11 petition filed on June 25, 2008 against EFI.  Bradley D.

28

1   Sharp ("Fund Trustee," and jointly with the EFI Trustee "Trustees") was appointed the Chapter

2   11 Trustee for the Fund.

3        EFI is a California corporation that had been a licensed real estate brokerage firm, since

4   the late 1980's, most recently by and through Joshua Yaguda as its designated officer-broker.

5   EFI arranged and made real estate loans to developers of residential and commercial projects

6   located primarily in California.  EFI funded these loans by raising money through private

7   placement offerings.  Investors who subscribed to the offering were to receive assignments of

8   fractionalized interests in promissory notes which were held as tenants in common with other

9   fractionalized notes.  The promissory notes were to be secured by deeds of trusts that were to be

10  recorded against the property to be developed by the borrower.  There are as many as 1600

11  individual tenant in common interest holders ("TICS") who have invested over $150 million

12  through EFI.  The Fund is also a TIC holder.  In addition, EFI managed the Fund, a California

13  Limited Liability Company formed by EFI for the purpose of investing in TICS that were to be

14  secured by California real estate.

15       On or about October 20, 2008, the Office of the United States Trustee appointed

16  members to the EFI Committee from the TICS.  The EFI Committee members are as follows:

17  Jim W. David, Thomas Schultheis, Clifford Munk, Donna and Robert Berg Foundation, John G.

18  Henry, M.D.-Pension Fund and Marjorie Jacobsen, Trustee of the Marjorie L. Jacobsen 2002

19  Revocable Trust.

20

21       On or about September 4, 2008, the Office of the United States Trustee appointed

22  members to the Fund Committee.  The Fund Committee members are as follows:  John Lacey,

23  James Buckley, Robert Meyer, Sean O'neal, Harold Steinbeck, William Adams, Patrick "Rick"

24  Wheeler, and Chris Madsen.

25       The members of each of the Committees determined that given the size and complexity

26  of the Cases and the number of creditors and interest holders in the Cases, including the TICS

27

28

1  (which most likely are unsecured creditors that may hold a partial secured claim) it was

2  imperative that they obtain errors and omissions insurance for each of the Committees' members.

3  On or about January 15, 2009, an errors and omissions insurance policy provided by The

4  Navigators Group, Inc. was bound for the benefit of the EFI Committee ("EFI Policy").

5  Attached hereto as Exhibit "1" and incorporated herein by this reference is a copy of the

6  Summary of Coverage – Professional Liability and the authorization to bind coverage executed

7  by the EFI Committee Chairman as well as a number of EFI Committee members.  Attached

8  hereto as Exhibit "2" and incorporated herein is a true and correct copy of the EFI Policy entitled

9  "InNAVation Navigators Specialty Insurance Company Miscellaneous Professional Liability

10  Insurance" and addendums thereto. Attached hereto as Exhibit "3" and incorporated herein by

11  this reference is the invoice for the premium due for the EFI Policy.  The total cost of the EFI

12  Policy is $15,483.75.  Due to the fact that the EFI Committee did not have funds available to

13  satisfy the full amount of the EFI Policy premium, the EFI Committee elected to finance the EFI

14  Policy premium.  Attached hereto as Exhibit "4" and incorporated herein by this reference is a

15  true and correct copy of the premium financing agreement between the EFI Committee and

16  Premium Financing Specialists of California, Inc.   The finance charge is $471.51.  See Exhibit

17  "4".  Thus, the total cost of the EFI Policy is $15,955.26.[1]  The EFI Trustee has indicated that he

18  is not opposed to the obtaining of the EFI Policy by the EFI Committee.

19  On or about February 11, 2009, an errors and omissions insurance policy provided by

20  The Navigators Group, Inc. was bound for the benefit of the Fund Committee ("Fund Policy"

21  and jointly with the EFI Policy referred to as the "Policies" ).  Attached hereto as Exhibit "5" and

22  incorporated herein by this reference is a copy of the Summary of Coverage – Professional

---

[1] To preserve the EFI Policy, counsel for the EFI Committee advanced the cash down payment ($4,233.75), the February 2009 premium payment ($1,302.39) and the March 2009 premium payment ($1,302.39) for advances totaling $6,838.53.

4

1 Liability and the authorization to bind coverage for the Fund Committee.  The Fund Policy is

2 identical to the EFI Policy, a copy of which is attached hereto as Exhibit "2."  The premium due

3 for the Fund Policy is $15,483.75.  See Exhibit "5" and "6."  Due to the fact that the Fund

4 Committee did not have funds available to satisfy the full amount of the Fund Policy premium,

5 the Fund Committee elected to finance the Fund Policy premium.  Attached hereto as Exhibit "6"

6 and incorporated herein by this reference is a true and correct copy of the premium financing

7 agreement between the Fund Committee and Premium Financing Specialists of California, Inc.

8 The finance charge is $471.51.  See Exhibit "6".  Thus, the total cost of the Fund Policy is

9 $15,955.26.[2]  The Fund Trustee has indicated that he was not opposed to the obtaining of the

10 Fund Policy by the Fund Committee.

11

12 ## II.

13

14 ### THE COURT SHOULD AUTHORIZE THE REIMBURSEMENT OF THE COMMITTEES FOR THE PREMIUMS ASSOCIATED WITH THE POLICIES

15 Bankruptcy Code section 503(b) provides that, after notice and a hearing, "there shall be

16 allowed administrative expenses . . . including -- (3) the actual, necessary expenses . . . incurred

17 by – (F) a member of a committee appointed under section 1102 of this title, if such expenses are

18 incurred in the performance of the duties of such committee." See 11 U.S.C. §503(b)(3).

19 Subsection (F) was added to section 503(b)(3) by the Bankruptcy Reform Act of 1994,

20 Pub.L. No. 103-394, §§ 110, 108 Stat. 4106, 4113.  Prior to this amendment, the Bankruptcy

21 Code was silent regarding whether members of official committees appointed in chapter 11 cases

22 were entitled to reimbursement for expenses incurred in the course of performing their

23 committee duties, and the courts were split on the question of allowing reimbursement.

24 As the court explained in McDow v. Official Committee of Equity Sec. Holders of Criimi

25 Mae Inc., 247 B.R. 146 (D. Md. 1999), "The plain language of subsection (F) merely establishes

26 a requirement that the expense incurred by the committee member be causally connected to his

27

28 ──────────────
[2] To preserve the Fund Policy, counsel for the Fund Committee advanced the cash down payment

1    performance of committee duties.  There is no basis in the language of subsection (F) or its

2    legislative history for distinguishing between specific kinds of committee member expenses.  If

3    the expense would not have been incurred but for an individual's service on a section 1102

4    committee, it may be reimbursable under section 503(b)(3)(F)." Id. at 151 (citing In re County of

5    Orange, 179 B.R. 195, 200 (Bankr. C.D. Cal. 1995)).  In determining that the insurance policy

6    premium incurred by the Equity Committee in the Criimi Mae case was an actual and necessary

7    expense entitled to administrative priority, the McDow court looked to three factors: "1) that the

8    Equity Committee was beneficial to the Debtor's reorganization process; 2) that the Equity

9    Committee could not function without the expenditure for the insurance policy; and 3) that the

10   expenditure was reasonable under the totality of the circumstances of the case." Id. at 152.

11        In the above captioned bankruptcy cases, it is indisputable that the Committees are not

12   only necessary but also are beneficial to the reorganizational efforts of EFI and the Fund.  Given

13   the complexity of the cases and the responsibilities and duties conveyed upon each of the

14   Committees' members by the Bankruptcy Code, it is important that errors and omissions policies

15   are in place.  The Policies are an actual and necessary expense of the Committees which is

16   directly related to the effective and efficient functioning of the Committees.  Furthermore, the

17   expenses associated with the Policies are reasonable and appropriate in these Cases.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   _____

($4,233.75) and the March 2009 premium payment ($1,302.39) for advances totaling $5,538.85.

1

## III.

2

## CONCLUSION

3      Wherefore, the Committees respectfully request that this Court authorize the

4 reimbursement of the expenses associated with the Policies and authorize each of the Trustees to

5 disburse from their respective Estates funds to cover the premiums for the EFI Policy in the

6 amount of $15,955.26 and the Fund Policy in the amount of $15,955.26.

7

8 Dated:  March 3, 2009                                          **EZRA BRUTZKUS GUBNER LLP**

9

10                                                               By:  /s/ Robyn B. Sokol
                                                                       Robyn B. Sokol
11                                                               Attorneys for the Official Committee of
                                                               Unsecured Creditors for EFI
12

13 Dated:  March 3, 2009                                         **MICHAELSON, SUSI & MICHAELSON**

14

15                                                               By:  /s/ Peter Susi
                                                                       Peter Susi
16                                                               Attorneys for the Equity Committee of the Fund

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF ROBYN B. SOKOL[3]

I, Robyn B. Sokol, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California and before the United States Bankruptcy Court for the Central District of California and I am authorized to make this declaration.

2.     This declaration is submitted in support of the "Joint Motion Of The Committees For Order Authorizing Reimbursement Of Expenses Of The Committees Arising From Premiums Associated With Errors And Omission Insurance Policies For The Committees" (the "Motion").

3.     I am a member of Ezra Brutzkus Gubner LLP, counsel for the Official Committee of Unsecured Creditors in the EFI Case. The facts set forth herein are based upon my personal knowledge, and, if called as a witness, I could and would testify competently thereto.

4.     On or about January 15, 2009, an errors and omissions insurance policy provided by The Navigators Group, Inc.("EFI Policy") was bound for the benefit of the EFI Committee members. Attached hereto as Exhibit "1" and incorporated herein by this reference is a copy of the Summary of Coverage – Professional Liability and the authorization to bind coverage executed by the EFI Committee Chairman as well as a number of EFI Committee members. Attached hereto as Exhibit "2" and incorporated herein is EFI Policy entitled "InNAVation Navigators Specialty Insurance Company Miscellaneous Professional Liability Insurance" and addendums thereto. Attached hereto as Exhibit "3" and incorporated herein by this reference is the invoice for the EFI Policy. The cost of the EFI Policy is $15,483.75. See Exhibit "3".

5.     Due to the fact that the EFI Committee did not have funds available to satisfy the full amount of the EFI Policy premium, the EFI Committee elected to finance the EFI Policy premium. Attached hereto as Exhibit "4" and incorporated herein by this reference is a true and correct copy of the premium financing agreement between the EFI Committee and Premium Financing Specialists of California, Inc.   The finance charge is $471.51. See Exhibit "4".

---

[3]All terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

6.  Total cost of the EFI Policy is $15,955.26.[4]

7.  The EFI Trustee has indicated that he is not opposed to the obtaining of the EFI Policy by the EFI Committee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and executed this 3rd day of March, 2009, at Woodland Hills, California.

ROBYN B. SOKOL

---

[4] To preserve the EFI Policy, counsel for the EFI Committee advanced the cash down payment ($4,233.75), the February 2009 premium payment ($1,302.39) and the March 2009 premium payment ($1,302.39) for advances totaling $6,838.53.

### DECLARTION OF PETER SUSI[5]

I, Peter Susi, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and before the United States Bankruptcy Court for the Central District of California and I am authorized to make this declaration.

2.      This declaration is submitted in support of the "Joint Motion Of The Committees For Order Authorizing Reimbursement Of Expenses Of The Committees Arising From Premiums Associated With Errors And Omission Insurance Policies For The Committees" (the "Motion").

3.      I am a member of Michaelson, Susi & Michaelson, a professional corporation, counsel for the Official Equity Committee the Fund Case.  The facts set forth herein are based upon my personal knowledge, and, if called as a witness, I could and would testify competently thereto.

4.      On or about February 11, 2009, an errors and omissions insurance policy provided by The Navigators Group, Inc. was bound for the benefit of the Fund Committee ("Fund Policy").  Attached hereto as Exhibit "5" and incorporated herein by this reference is a copy of the Summary of Coverage – Professional Liability and the authorization to bind coverage for the Fund Committee.

5.      The Fund Policy, is identical to the EFI Policy, a copy of which is attached hereto as Exhibit "2."  The premium due for the Fund Policy is $15,483.75.  See Exhibits "5 and "6".   Due to the fact that the Fund Committee did not have funds available to satisfy the full amount of the Fund Policy premium, the Fund Committee elected to finance the Fund Policy premium.  Attached hereto as Exhibit "6" and incorporated herein by this reference is a true and correct copy of the premium financing agreement between the Fund Committee and Premium Financing Specialists of California, Inc.   The finance charge is $471.51.  See Exhibit "6".  Thus, the total cost of the Fund Policy is $15,955.26.[6]  The Fund Trustee has indicated that he is not opposed to the obtaining of the Fund Policy by the Fund Committee.

---

[5] All terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[6] To preserve the Fund Policy, counsel for the Fund Committee advanced the cash down payment ($4,233.75) and the March 2009 premium payment ($1,302.39) for advances totaling $5,538.85.

6.    The members of each of the Fund Committee determined that given the size and complexity of the Cases and the number of creditors and interest holders in the Cases it was imperative that they obtain errors and omissions insurance.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and executed this 3rd day of March, 2009, at Santa Barbara, California.

PETER SUSI

## Frenkel&Co.,Inc.
International Insurance Brokers Est. 1878



1/16/2009

### SUMMARY OF COVERAGE – PROFESSIONAL LIABILITY

**NAMED INSURED:**     Official Committee General Unsecured Creditors
for Estate Financial, Inc.

**MAILING ADDRESS:**     c/o Ezra Brutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

**POLICY NUMBER:**     **NY09MPL559730NC**

**INSURER:**     Navigators Specialty Insurance Company
Non-admitted carrier
(Financial Strength Rating **A, X** by A.M. Best Co.)

**COVERAGE:**     Errors & Omissions Policy Form NSIC MPL
Claims Made Form*

*This policy applies only to those *claims* that are first made against the Insured and reported in
writing to the Company during the policy period or extended reporting period, if any. Claim
expenses are within and reduce the Limit of Liability.

**POLICY TERM:**     1/15/2009 to 1/15/2010
Effective both days at 12:01 A.M. at the address above

**PROFESSIONAL SERVICES:**     Solely in the performance of providing services as a
bankruptcy trustee

**ENDORSEMENTS:**

1. Amendatory Endorsement – attached for your review
2. OFAC Exclusion

**LIMITS OF LIABILITY:**

| Limit of Liability Each claim/Aggregate (inclusive of Defense Costs, Charges & Expenses) | Deductible (Each Claim- including costs & expenses) | Annual Premium | CA Tax & stamping fee (3.225% effective 1/1/09) | TOTAL ANNUAL PREMIUM |
|---|---|---|---|---|
| $3,000,000 / $3,000,000 | $5,000 | $15,000 | $483.75 | $15,483.75 |

**RETROACTIVE DATE:**     1/15/2009

**Subject to the receipt, review and underwriter acceptance of the following
Additional information:**

1. The attached acknowledgment letter signed and dated by the insured

**NOTICE OF CANCELLATION/NON-RENEWAL:**

30 Days Notice of Cancellation or Non-Renewal, except 10 days for non-payment.

*Frenkel & Co., Inc.  License No.: 0098170*

EXHIBIT    1

 **Frenkel&Co.,Inc.**
International Insurance Brokers Est. 1878

**Note:** This summary is intended to present a brief overview of the coverages being offered by the policies listed. It is not intended to represent the full and complete insurance policy contract nor is it intended to provide coverage excluded from the policy itself. Refer to the policy for complete definitions, conditions, limitations and exclusions.

## DISCLOSURE OF COMPENSATION ARRANGEMENTS

Frenkel & Co., Inc. ("Frenkel") secures and otherwise facilitates the purchase of insurance coverage for its policyholder clients from a variety of insurance carriers and group benefits providers (collectively "carriers") and sometimes engages the services of other entities in connection with the issuance of such coverage. In most instances, Frenkel is primarily compensated for the insurance brokerage services that it provides to its policyholder clients through commission payments that are based on the premium charged, and paid for, by the issuing market for each policy secured for Frenkel's clients. The percentage of these commissions varies by market and policy type.

In addition, Frenkel has entered into contingent compensation arrangements with markets based on circumstances, including without limitation, the overall volume of premiums paid to or policies issued by or through a particular market for Frenkel's clients; the overall growth, persistency and/or retention of the premiums paid by Frenkel's clients to or through a particular market; and, in certain cases, the profitability of the total premium (i.e., claims history on the coverage) paid by Frenkel's clients to or through a particular market.

A list of all of the carriers from which Frenkel has received contingent compensation since 2002 can be accessed electronically by actual and prospective policyholder clients at www.frenkel.com.

Moreover, documentation currently in Frenkel's possession evidencing Frenkel's current compensation agreements with the aforementioned carriers is available for all policyholders' review at Frenkel's headquarters; however, if those policyholders or their representatives have any additional questions or require any other information regarding any of the compensation received by Frenkel for any of its insurance brokerage services, please do not hesitate to contact your account executive.

*Frenkel & Co., Inc.  License No.: 0098170*

 

## Frenkel&Co.,Inc.
### International Insurance Brokers Est. 1878

**Official Committee General Unsecured Creditors for Estate Financial, Inc.**
**Errors & Omissions Liability Insurance**
**Effective:  TBD**

Proposal of Insurance

**Authorization to Bind Coverage**

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance
Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc.
as outlined in this Proposal of Insurance dated December 4, 2008.**

Option #2                    ~~Yes~~

**Please provide a premium finance agreement (finance quote).    Yes ☑  No ☐**

Authorized By: _____  Date: _3-3-09_
                     Signature

Print Name: ___James W Davis___  Title: _Chairman_

**Please fax and mail this page to:**

**Frenkel & Co., Inc.
Attention:  Michael Dow
725 South Figueroa Street, Suite 2200
Los Angeles, CA 90017
Tel: (213) 787-1100
Fax: (213) 787-1167**

**Thank you.**

14

 **Frenkel&Co.,Inc.**
International Insurance Brokers Est. 1878 

**Official Committee General Unsecured Creditors for Estate Financial, Inc.**
**Errors & Omissions Liability Insurance**
**Effective:  TBD**

Proposal of Insurance

**Authorization to Bind Coverage**

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance
Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc.
as outlined in this Proposal of Insurance dated December 4, 2008.**

Option #2

Please provide a premium finance agreement (finance quote).     Yes ☑   No ☐

Authorized By: _____     Date: _____
              Signature

Print Name: _____   Title: _____

**Please fax and mail this page to:**

**Frenkel & Co., Inc.**
**Attention:  Michael Dow**
**725 South Figueroa Street, Suite 2200**
**Los Angeles, CA 90017**
**Tel: (213) 787-1100**
**Fax: (213) 787-1167**

**Thank you.**

**15**

 

Frenkel&Co.,Inc.
International Insurance Brokers Est. 1878

## Official Committee General Unsecured Creditors for Estate Financial, Inc.
## Errors & Omissions Liability Insurance
## Effective: TBD

Proposal of Insurance

## Authorization to Bind Coverage

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc. as outlined in this Proposal of Insurance dated December 4, 2008.**

Option #2                    ___X___

**Please provide a premium finance agreement (finance quote).    Yes ☒   No ☐**


**Authorized By:** ___*Sherri G Bell*___ **Date:** _2/3/09_
                    Signature


**Print Name:** _Sherri G. Bell_        **Title:** _____

**Please fax and mail this page to:**

**Frenkel & Co., Inc.**
**Attention: Michael Dow**
**725 South Figueroa Street, Suite 2200**
**Los Angeles, CA 90017**
**Tel: (213) 787-1100**
**Fax: (213) 787-1167**


**Thank you.**

 **Frenkel&Co., Inc.**
International Insurance Brokers Est. 1878



### Official Committee General Unsecured Creditors for Estate Financial, Inc.
### Errors & Omissions Liability Insurance
### Effective: TBD

Proposal of Insurance

### Authorization to Bind Coverage

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance
Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc.
as outlined in this Proposal of Insurance dated December 4, 2008.**

Option #2 _____

**Please provide a premium finance agreement (finance quote).     Yes ☐     No ☑**

Authorized By: _Marjorie L. Jacobsen_   Date: _02/03/09_
                    Signature

Print Name: _MARJORIE L. JACOBSEN_   Title: _COMMITTEE MEMBER_

**Please fax and mail this page to:**

**Frenkel & Co., Inc.
Attention: Michael Dow
725 South Figueroa Street, Suite 2200
Los Angeles, CA 90017
Tel: (213) 787-1100
Fax: (213) 787-1167**

**Thank you.**

17

# InNAVation

**NAVIGATORS SPECIALTY INSURANCE COMPANY**

**MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE**

**EXHIBIT  2**

## NAVIGATORS SPECIALTY INSURANCE COMPANY

## MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE

**NOTICE:** This is a Claims made and reported form. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to liability for only those Claims that are first made against the Insured and reported to the Company while the insurance is in force. The Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the deductible. Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

NAVIGATORS Insurance Company (hereafter the "Company") agrees with the Named Insured, set forth at Item 1 of the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the application which is made a part of this insurance policy (hereinafter referred to as the "policy" or "insurance") and subject to the Limit of Liability, exclusions, conditions and other terms of this insurance:

I.       **INSURING AGREEMENTS**

      A.     Coverage

            To pay on behalf of the Insured Damages and Claims Expenses which the Insured shall become legally obligated to pay because of any Claim or Claims first made against any Insured and reported to the Company during the Period of Insurance or Extended Reporting Period, resulting from any act, error or omission of the Insured in rendering or failing to render Professional Services as described in Item 8 of the Declarations, for others on behalf of the Named Insured designated in Item 1 of the Declarations and caused by the Insured except as excluded or limited by the terms, conditions and exclusions of this policy.

      B.     Defense and Settlement (Included in the Limit of Liability)

           1.     The Company shall have the right and duty to defend, subject to the Limit of Liability, any Claim against the Insured seeking payment under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent.

           2.     The Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the Deductible.

3.      The Company shall have the right to make any investigation it deems necessary, including, without limitation, any investigation with respect to the application and statements made in the application and with respect to coverage.

4.      If the Insured shall refuse to consent to any settlement or compromise recommended by the Company and acceptable to the claimant and elects to contest the Claim, the Company's liability for any Damages and Claims Expenses shall not exceed the sum of:
(a) the amount for which the claim could have been settled ( the base amount),
(b) twenty-five percent of any Damages and Claims Expenses in excess of the base amount, less the remaining Deductible, plus the Claims Expenses incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

5.      The Company shall not be obligated to pay any Damages or Claims Expenses, or to undertake or continue defense of any suit or proceeding after the applicable limit of the Company's liability has been exhausted by payment of Damages or Claims Expenses or after deposit of the applicable policy limit in a court of competent jurisdiction, and that upon such payment, the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

## C.      Disciplinary Proceedings

If, during the Period of Insurance, a Disciplinary Proceeding is commenced against any Insured, arising out of any act, error or omission of the Insured in rendering or failing to render Professional Services for others, the Company will reimburse the Insured for reasonable attorneys fees, costs and expenses incurred in responding to such Disciplinary Proceeding. The maximum amount payable, regardless of the number of Disciplinary Proceedings or the number of Insureds shall be $5,000. The deductible shall not apply to this provision; however, any payments made by the Company under this provision will be included within the applicable limit of liability and not in addition thereto. The Company shall not be obligated to defend any Disciplinary Proceeding, or pay any fine, penalty or award resulting from any Disciplinary Proceeding.

## II.        PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a)    if the Named Insured designated in Item 1 of the Declarations is an individual, the person so designated but only with respect to the Professional Services described in Item 8 of the Declarations;

(b)    if the Named Insured designated in Item 1 of the Declarations is a firm or association, the firm or association so designated and any partners, directors, officers, employees, independent contractors and volunteers but solely with respect to the Professional Services, described in Item 8 of the Declarations, rendered on behalf of the Named Insured designated in Item 1 of the Declarations;

(c)    any person who previously qualified as an Insured under (b) above prior to the termination of the required relationship with the Named Insured, but solely with respect to the Professional Services, described in Item 8 of the Declarations, rendered on behalf of the Named Insured designated in Item 1 of the Declarations.

(d)    the estate, heirs, spouse, executors, administrators, assigns and legal representatives of any Insured in the event of such Insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such Insured would otherwise be provided coverage under this insurance.

**III.**      **TERRITORY**

This insurance applies to acts, errors or omissions which take place anywhere in the world, provided that the Claim is first made against the Insured and reported to the Company during the Period of Insurance or, if applicable, the Extended Reporting Period.

**IV.**      **EXCLUSIONS**

The coverage under this insurance does not apply to Damages or Claims Expenses incurred with respect:

(a)    to any Claim arising out of any criminal, dishonest, fraudulent or malicious act, error or omission of any Insured. However, notwithstanding the foregoing, the insurance afforded by this policy shall apply to Claims Expenses incurred in defending any such Claim or circumstance which might lead to a Claim, but shall not apply to any Damages which the Insured

might become legally obligated to pay;

(b)  to any Claim by one Insured against another Insured.

(c)  to any Claim arising out of bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof; However, notwithstanding the foregoing, the insurance afforded by this policy shall apply to Claims alleging emotional distress, mental anguish or humiliation  arising out of any act, error or omission of the Insured in rendering or failing to render Professional Services for others on behalf of the Named Insured

(d)  to any Claim arising out of the insolvency or bankruptcy of any Insured or of any other entity including but not limited to the failure, inability, or unwillingness to pay Claims, losses, or benefits due to the insolvency, liquidation or bankruptcy of any such individual or entity;

(e)  to any Claim arising out of any Insured's activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than of the Named Insured;

(f)  to any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in Item 1 of the Declarations, which any Insured has a direct or beneficial ownership interest of more than 10%, or which is directly or indirectly controlled, operated or managed by any Insured.

(g)  to any Claim arising out of any acts, errors, or omissions that took place prior to the effective date of the Period of Insurance, if any Insured on that effective date could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim;

(h)  to any Claim arising out of  any liability assumed by any Insured under any contract or agreement, whether written or oral, including but not limited to any express warranties or guarantees, or estimates of cost, unless such liability would have attached to the Insured in the absence of such agreement;

(i)  to any Claim arising out of the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto;

(j)  to any Claim or circumstance which might lead to a Claim in respect of which any Insured has given notice to the insurer of any other policy in force prior to the effective date of the Period of Insurance;

(k)     to any Claim arising out of trademark or patent;

(l)     to any Claim arising out of employment practices including any actual or
        alleged refusal to employ, wrongful hiring, termination of employment or
        employment practice, improper evaluation or promotion, humiliation,
        harassment, misconduct or discrimination of any kind by an insured, based
        on factors including, but not limited to, race, color, creed, national origin,
        physical or other disability, marital status, age, gender or sexual
        orientation, including without limitation. This includes creation of a work
        environment that is intimidating, hostile or offensive.

(m)     to any Claim arising out of:

        (i)     the actual, alleged or threatened discharge, dispersal, release or
                escape or failure to detect the presence of "pollutants," including but
                not limited to solid, liquid, gaseous or thermal irritants or
                contaminants, including asbestos, smoke, vapor, soot, fumes, acids,
                alkalis, chemicals and waste (waste includes materials to be
                recycled, reconditioned or reclaimed); or

        (ii)    Any governmental or regulatory directive or request that the Insured
                or anyone acting under its direction or control test for, monitor, clean
                up, remove, contain, treat, detoxify or neutralize said "pollutants."

(n)     to any claim arising out of any actual or alleged commingling of or inability
        or failure to pay, collect or safeguard funds;

(o)     to any claim arising out of loss alleged to have been    sustained        through
        fluctuation in the market value of any security or property including real
        property;

(p)     to any Claim based upon any investment or tax opinion, advice or
        analysis or the performance or failure to render any Professional
        Services in relation to any offering, syndication, partnership, tax shelter,
        tax haven, or tax avoidance arrangement, organization or device.

(q) to any Claim arising out of any act, error or omission involving any security or
    any activities or transactions subject or claimed to be subject to the Securities
    Act of 1933, The Securities Exchange Act of 1934, The Public Utility Holding
    Company Act of 1935, The Trust Indenture Act of 1939, The Investment
    Company Act of 1940 or the Investment Advisors Act of 1940 or any

purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law.

If a retroactive date is applicable to this coverage it will appear at Item 6 of the Declarations and the following exclusion shall apply:

(r) to any Claim arising out of any act, error or omission which took place, or is alleged to have taken place, prior to the retroactive date as set forth in Item 6 of the Declarations.

## V.    CONDITIONS

Definitions: Wherever used in this policy:

A.    "Claims Expenses" means:

    (1)    reasonable and necessary fees charged by an attorney(s) designated by the Company; and

    (2)    all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, if incurred by the Company, or by the Insured with the written consent of the Company.

    (3)    Claims Expenses does not include any salary, overhead or other charges by the Insured for any time spent in cooperating in the defense and investigation of any Claim or circumstance which might lead to a Claim notified under this insurance.

B.    "Period of Insurance" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this insurance and specifically excludes any Extended Reporting Period hereunder.

C.    "Extended Reporting Period", if applicable, means the applicable period of time after the end of the Period of Insurance for reporting Claims, arising out of acts, errors or omissions which take place prior to the end of the Period of Insurance and otherwise covered by this insurance, specified in Section I, A.

D.    "Claim" means a demand received by any Insured for money or services including the service of suit or institution of arbitration proceedings against the Insured.

E.    "Damages" mean a monetary judgment, award or settlement, including any

such judgment or settlement for personal injury, but do not include fines or statutory penalties, sanctions whether imposed by law or otherwise, any amount awarded in any Disciplinary Proceeding, the return of or restitution of professional fees, costs and expenses, the multiplied portion of multiplied damages, amounts for which the Insured is not financially liable or which are without legal recourse to the Insured or matters which may be deemed uninsurable under the law.   Punitive or exemplary damages shall constitute "Damages," but only to the extent such punitive or exemplary damages are insurable under applicable law.

VI.        **LIMIT OF LIABILITY**

A.        The Limit of Liability stated in the Declarations as "each claim" is the limit of the Company's liability for all Damages and Claims Expenses arising out of the same, related or continuing professional services without regard to the number of Insureds, Claims or claimants.

B.        The Limit of Liability stated in the Declarations as "annual aggregate" is the total limit of the Company's liability for all Damages and Claims Expenses arising out of all Claims covered under the terms and conditions of this policy.

C.        The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Company for the Period of Insurance.

VII.       **DEDUCTIBLE**

The deductible amount stated in Item 4 of the Declarations shall be satisfied by payments by the Insured of Damages and Claims Expenses resulting from all Claims first made and reported to the Company during the Period of Insurance and the Extended Reporting Period as a condition precedent to the payment by the Company of any amounts hereunder, and the Company shall be liable only for the amounts in excess of such Deductible subject to the Company's total liability not exceeding the limit stated in Item 3 of the Declarations.  The Insured shall make direct payments within the deductible to appropriate other parties designated by the Company.

VIII.      **INNOCENT INSURED**

A.        Whenever coverage under this insurance would be excluded, suspended or lost:

(1)    because of any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any Insured, and with respect to which any other Insured did not personally participate or personally acquiesce in or remain passive after having personal knowledge thereof, or

(2)    because of noncompliance with any condition relating to the giving of notice to the Company with respect to which any other Insured shall be in default solely because of the failure to give such notice or concealment of such failure by one or more Insureds responsible for the loss or damage otherwise insured hereunder.

the Company agrees that such insurance as would otherwise be afforded under this policy shall cover and be paid with respect to those Insureds who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to give notice, provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of Clause VIII shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured to comply therewith.

B.    With respect to this provision, the Company's obligation to pay in such event shall be in excess of the deductible and in excess of the full extent of any assets of any Insured to whom the exclusion applies. In no event shall the Company's obligation to pay exceed the Limit of Liability stated in Item 3 of the Declarations.

C.    This provision does not alter or change the claims made and reporting provision of the policy.

IX.    **EXTENDED REPORTING ENDORSEMENT**

A    In the event of cancellation or non-renewal of this policy by the Company or by the Named Insured shall have the right, upon payment in full and not proportionally or otherwise in part of an appropriate additional premium within 30 days of such termination, to have issued an endorsement providing an **Extended Reporting Period** for all **Claims** first made against any **Insured** and reported to the Company after the termination of the Period of Insurance arising out of any act, error or omission occurring prior to the termination of the Period of Insurance and otherwise covered by this policy.

The appropriate additional premium and corresponding Extended Reporting Period

shall be:

(1)    100% of the Named Insured's last annual premium for a 1 year Extended Reporting Period;

(2)    150% of the Named Insured's last annual premium for a 2 year Extended Reporting Period;

(3)    200% of the Named Insured's last annual premium for a 3 year Extended Reporting Period;

(4)    250% of the Named Insured's last annual premium for a 5 year Extended Reporting Period.

B.    The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Company for the Period of Insurance.

C.    The quotation by the Company of a different premium or deductible or Limit of Liability or changes in policy language for the purpose of renewal shall not constitute a refusal to renew by the Company.

D.    The right to the Extended Reporting Period shall not be available to the Named Insured where cancellation or non-renewal by the Company is due to non-payment of premium or failure of an Insured to pay such amounts in excess of the applicable Limit of Liability or within the amount of the applicable deductible.

E.    All notices and premium payments with respect to the Extended Reporting option shall be directed to the Company through the entity named in Item 9 of the Declarations.

F.    At the commencement of the Extended Reporting Period the entire premium shall be deemed earned, and in the event that the Named Insured terminates the Extended Reporting Period for any reason prior to its natural expiration, the Company will not be liable to return any premium paid for the Extended Reporting Period.

## X.    OTHER INSURANCE

This insurance shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this policy.

## XI.    NOTICE OF CLAIM, OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

A.  If any Claim is made against the Insured, the Insured shall immediately forward to the Company through persons named in Item 7 of the Declarations every demand, notice, summons or other process received by it or its representative.

B.  If during the Period of Insurance the Insured first becomes aware of an act or omission that could reasonably be the basis for a Claim it must give written notice to the Company through persons named in Item 7 of the Declarations during the Period of Insurance of:

   (1)     the specific act, error or omission; and

   (2)     the injury or damage which may result or has resulted from the act, error or omission; and

   (3)     the circumstance by which the Insured first became aware of the act, error or omission.

   Any subsequent Claim made against the Insured which is the subject of the written notice shall be deemed to have been made at the time written notice was first given to the Company.

C.     A Claim shall be considered to be reported to the Company when notice is first given to the Company through persons named in Item 7 of the Declarations of the Claim or of an act, error or omission which could reasonably be expected to give rise to a Claim.

D.     All Claims arising out of the same, continuing or related Professional Services shall be considered a single Claim and deemed to have been made at the time the first of the related Claims was made and shall be subject to one Limit of Liability.

E.     In the event of non-renewal of this insurance by the Company, the Insured shall have thirty (30) days from the expiration date of the Period of Insurance to notify the Company of Claims made against the Insured during the Period of Insurance which arise out of any act, error or omission occurring prior to the termination date of the Period of Insurance and otherwise covered by this insurance.

F.     If any Insured shall make any Claim under this policy knowing such claim to be false or fraudulent, as regards amount or otherwise, this policy shall become null and void, and all coverage hereunder shall be forfeited.


**XII.**          **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company in all investigations, including investigations regarding the application and coverage under this policy and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an employee of any Insured who may be liable to the Insured because of acts, errors or omissions with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any Claim without the consent of the Company.

## XIII.        ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment or award against the Insured after actual trial or arbitration or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment, award or written agreement shall thereafter be entitled to make a Claim under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this insurance to join the Company as a party to an action or other proceeding against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of its obligations hereunder.

## XIV.        SUBROGATION

In the event of any payment under this insurance, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the payment of Damages by the Company to prejudice such rights.

## XV.        CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this insurance or estop the Company from asserting any right under the terms of this insurance; nor shall the terms of this insurance be waived or changed, except by endorsement issued to form a part of this insurance, signed by the Company.

XVI.       **MERGERS AND ACQUISITIONS**

The Named Insured shall be required to give written notice to the Company prior to the completion of a merger or acquisition by or of the Named Insured, if the acquired entity's annual revenue is greater than 15% of the Named Insured's annual revenue, the Company expressly reserves the right to demand a premium adjustment if this insurance is to remain in force subsequent to any merger or acquisition.

XVII.      **ASSIGNMENT**

The interest hereunder of any Insured is not assignable.  If the Insured shall die or be adjudged incompetent, such insurance shall cover the Insured's legal representative as the Insured as would be permitted by this policy.

XVIII.     **CANCELLATION**

A.    **Cancellation**

A       This policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This insurance may be cancelled by the Company because the Insured has failed to pay a premium when due this insurance may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured at the address shown in the Declarations stating when not less than 10 days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Period of Insurance.  Delivery (where permitted by law) of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

B       If the Named Insured cancels this insurance, earned premium shall be computed in accordance with the attached short rate table and procedure.  If the Company cancels this insurance, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

XIX.       **SINGULAR FORM OF A WORD**

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

## XX.        ENTIRE CONTRACT

By acceptance of this policy the Insured agrees that the statements in the Declarations and application are its agreements and representations, that this insurance is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company relating to this insurance.

## XXI.        WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein this insurance does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## XXII.        SERVICE OF SUIT

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.  The foregoing shall not constitute a waiver of the right of the Company to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States pertinent hereto.  In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates the President of Navigators Specialty Insurance Company, One Penn Plaza, 55th Floor, New York, NY 10119, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

## DECLARATIONS

Attaching to and forming part of
MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY NUMBER:

This Insurance is effected with
NAVIGATORS SPECIALTY INSURANCE COMPNAY

**THIS IS A CLAIMS-MADE PROFESSIONAL LIABILITY
INSURANCE POLICY.  PLEASE READ CAREFULLY.**

1.    NAMED INSURED:
      ADDRESS:

2.    PERIOD OF INSURANCE:        FROM:              TO:
      12:01 AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 1 ABOVE.

3.    LIMIT OF LIABILITY

      (a)    $                      Each claim - includes Claims Expenses.

      (b)    $                      Annual Aggregate - includes Claims Expenses.

4.    DEDUCTIBLE $                  Each Claim - includes Claims Expenses.

5.    GROSS PREMIUM US $     :

6.    RETROACTIVE DATE      :

7.    NOTICE OF CLAIM TO    :    Navigators Specialty Insurance Company
                                 One Penn Plaza, 55th floor
                                 New York, NY 10119
                                 Attn. Navigators Pro Claims Department

8.    PROFESSIONAL SERVICES:

9.    NOTICE OF ELECTION :

10.    FORMS AND ENDORSEMENTS ATTACHED HERETO

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.**

SECRETARY                              PRESIDENT

34

In consideration of the premium charged, it is understood and agreed that the terms of the policy are changed as follows:

**Section IV. Exclusions.**

Item (a) is deleted and replaced with: "Based on or arising out of any dishonest, intention-       ally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**;"

Item (i) is deleted and replace with: "Breach of fiduciary duty, responsibility or obligation of the **Insured** in connection with any 'employee pension benefit plan' or 'employee welfare benefit plan' of the **Insured** or any employer affiliated with the **Named Insured** through common ownership or control and their beneficiaries as those terms are defined in the ERISA code, or any regulation or order issued pursuant thereto, or any similar provisions of any state or federal statute or common law;"

Add new Exclusions:

(s) To any claim arising out of any loss sustained by an **Insured** as a beneficiary or distribute of any trust or estate;

(t) To any claim arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, amendments, rules or regulations promulgated there under or comparable state laws or statutes.

It is also understood and agreed that **EXCLUSIONS N., O.** and **P.** are deleted in their entirety.

All other provisions of this policy remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

ENDORSEMENT NO.:

**This endorsement, effective 12:01 am,**

**forms part of policy number:**

**issued to:**

**by: Navigators Specialty Insurance Company**

### OFAC ENDORSEMENT

It is agreed that:

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that any insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

MPL NSIC ENDT 404 (4/06)

**Frenkel & Co., Inc.**
CA License # 0098170
725 S. Figueroa St., # 2200
Los Angeles, CA 90017
Phone: (213) 787-1100
Fax: (213) 787-1167

| | Amount Paid |
|---|---|
| **INVOICE #6826** | |
| Account Number | Invoice Date |
| OFFICOM-01 | 1/15/2009 |

Official Committee General Unsecured Creditors for Esta
c/o EzraBrutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Remit To:

Frenkel & Co., Inc.
725 S. Figueroa St., #2200
Los Angeles, CA 90017

Invoice #: 6826                    Date Paid:              Check #:              Amount Paid:

Errors & Omissions                           Policy #: NY09MPL559730NC          Effective: 1/15/2009 to 1/15/2010
Company: Navigators Insurance Company                                          Acct Exec:  Maura Browning

| Item # | Trans Eff Date | Due Date | Trans | Description | Amount |
|---|---|---|---|---|---|
| 40310 | 1/15/2009 | 1/25/2009 | NNAG | Errors & Omissions Policy with Navigators Specialty Insurance Co. | $15,000.00 |
| 40311 | 1/15/2009 | 1/25/2009 | SLTX | Surplus Lines Tax | $450.00 |
| 40312 | 1/15/2009 | 1/25/2009 | SLSF | Surplus Lines Stamping Fee | $33.75 |

Total Invoice Balance:   $15,483.75

Thank you for allowing us to serve your insurance needs.

Forward Payment By Check To:          By Overnight Mail To:
Frenkel & Co., Inc.                   Frenkel & Co., Inc.
725 S. Figueroa St., Suite 2200       725 S. Figueroa St., Suite 2200
Los Angeles, CA 90017                 Los Angeles, CA 90017

Frenkel & Co., Inc. ("Frenkel") secures insurance coverage for its policyholder clients from a variety of insurance carriers. Frenkel is primarily compensated for the insurance brokerage service it provides to its policyholder clients through commission payments that are based on the premium charged, and paid for, by the issuing carrier for each policy secured for Frenkel's clients. The percentage of these commissions varies by carrier and policy type. In addition, Frenkel has contingent and/or supplemental compensation arrangements with certain carriers based on other circumstances, including without limitation, the aggregate volume of premiums paid to, or policies issued by, a particular carrier. Frenkel's compensation agreements with the insurance companies with which it does business are available for its policyholders' review, and a list of the carriers with any contingent/supplemental compensation agreements from 2002 forward is posted at www.frenkel.com.

1/15/2009                          Frenkel & Co., Inc.                                          Page 1

**EXHIBIT   3**

**PFS**

12424 WILSHIRE BLVD #1030
Los Angeles,CA 90025
(310)820-1023 FAX: (310)820-1032

**Premium Financing Specialists of California, Inc.**

License # 973 9750

| | | | | |
|---|---|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | **$15,483.75** | **AGENT** (Name & Place of business) | **INSURED** (Name and residence or business) |
| **B** | **CASH DOWN PAYMENT** | **$4,233.75** | FRENKEL OF CALIFORNIA INC | Official Committee of Unsecured Creditors for Estate Financial Inc. c/o Ezra Brutzkus Gubner LLP |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | **$11,250.00** | 725 S FIGUEROA STREET SUITE 2200 LOS ANGELES        CA    90017 (213)787-1100 | 21650 Oxnard Street, Suite 500 Woodland Hill        CA    91367 (818)827-9108 |

## LOAN DISCLOSURE

Quote Number: 1833168

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.95 % | $471.51 | $11,250.00 | $11,721.51 |

### YOUR PAYMENT SCHEDULE WILL BE

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 9 | $1,302.39 | MONTHLY Beginning: | 2/15/2009 |

ITEMIZATION OF THE AMOUNT FINANCED:
THE FULL AMOUNT FINANCED WAS PAID
TO THE INSURANCE COMPANY (COMPANIES).

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL TRMS | PREMIUM |
|---|---|---|---|---|---|
| NY09MPL559730N C | 1/15/2009 | NAVIGATORS SPECIALTY  INSURANCE CO | PRFLIA | 12 | $15,000.00 |
| | | TAXES | | | $483.75 |

| (CHECK CORRECT BOX)   ☐ PERSONAL   ☑ COMMERCIAL | TOTAL $ | $15,483.75 |
|---|---|---|

The undersigned insured directs Premium Financing Specialists of California, (herein, referred to as "Lender") to pay the premiums on the policies described above. In consideration of such premium payments, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the provisions herein set forth.
The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Understands that the finance charge begins to accrue as of the earliest policy effective date.
3. Agrees to all provisions set out above and on page 2.
**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

4. Irrevocably appoints Lender attorney-in-fact of the Insured with full power of substitution and full authority upon any default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
NOTICE:
**A. Do not sign this before you read the writing on the second page, even if otherwise advised.**
**B. Do not sign this if it contains any blank lines.**
**C. You are entitled to an exact copy of any agreement you sign.**
**D. You have the right to pay in advance the unpaid balance due under this agreement and you may be entitled to a partial refund of the finance charge.**

_(signature)_                               2/19/09

Signature of Insured or Authorized Agent          DATE

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____      _____
SIGNATURE OF AGENT                DATE

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** Agrees that this agreement shall be effective when written acceptance is mailed to insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured will pay Lender a cancellation charge of $15, if permitted, up to the limit specified by law. If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY, NV, and VT)

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee, if permitted by law, of $5 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement of the policy on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that Lender has no liability to the insured if the policy is not reinstated.

**11. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's succesors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). The agent or broker executing this agreement has a financial interest in the premium finance company that you have contracted with and as a result may receive financial benefit from arranging the financing of your insurance premium. If you have any questions about the benefits the agent/broker receive you should contact the agent/broker.

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY)

**15. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender's gross negligence or wilful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

## AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtedness of the insured.

39

 

## Official Committee General Unsecured Creditors for Estate Financial, Inc.
## Errors & Omissions Liability Insurance
## Effective:  TBD

Proposal of Insurance

## Authorization to Bind Coverage

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance
Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc.
as outlined in this Proposal of Insurance dated December 4, 2008.**

Option #2                     _____

**Please provide a premium finance agreement (finance quote).    Yes ☒  No ☐**

**Authorized By:** _____    **Date:** 2/19/09
Signature

**Print Name:** Robyn B. Sokol    **Title:** Attorney for Official
Committee of Unsecured
**Please fax and mail this page to:** Creditors for Estate
Financial, Inc.

**Frenkel & Co., Inc.
Attention:  Michael Dow
725 South Figueroa Street, Suite 2200
Los Angeles, CA 90017
Tel: (213) 787-1100
Fax: (213) 787-1167**

**Thank you.**

# Frenkel & Co., Inc.
CA License # 0098170
725 S. Figueroa St., # 2200
Los Angeles, CA 90017
Phone: (213) 787-1100
Fax: (213) 787-1167

| | Amount Paid |
|---|---|
| **INVOICE #6826** | |
| Account Number | Invoice Date |
| **OFFICOM-01** | **1/15/2009** |

Official Committee General Unsecured Creditors for Esta
c/o EzraBrutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Remit To:

Frenkel & Co., Inc.
725 S. Figueroa St., #2200
Los Angeles, CA 90017

| Invoice #: 6826 | Date Paid: | Check #: | Amount Paid: |
|---|---|---|---|
| Errors & Omissions | | Policy #: NY09MPL559730NC | Effective: 1/15/2009 to 1/15/2010 |
| Company: Navigators Insurance Company | | | Acct Exec: Maura Browning |

| Item # | Trans Eff Date | Due Date | Trans | Description | Amount |
|---|---|---|---|---|---|
| 40310 | 1/15/2009 | 1/25/2009 | NNAG | Errors & Omissions Policy with Navigators Specialty Insurance Co. | $15,000.00 |
| 40311 | 1/15/2009 | 1/25/2009 | SLTX | Surplus Lines Tax | $450.00 |
| 40312 | 1/15/2009 | 1/25/2009 | SLSF | Surplus Lines Stamping Fee | $33.75 |

**Total Invoice Balance:**    **$15,483.75**

Thank you for allowing us to serve your insurance needs.

Forward Payment By Check To:
Frenkel & Co., Inc.
725 S. Figueroa St., Suite 2200
Los Angeles, CA 90017

By Overnight Mail To:
Frenkel & Co., Inc.
725 S. Figueroa St., Suite 2200
Los Angeles, CA 90017

Frenkel & Co., Inc. ("Frenkel") secures insurance coverage for its policyholder clients from a variety of insurance carriers. Frenkel is primarily compensated for the insurance brokerage service it provides to its policyholder clients through commission payments that are based on the premium charged, and paid for, by the issuing carrier for each policy secured for Frenkel's clients. The percentage of these commissions varies by carrier and policy type. In addition, Frenkel has contingent and/or supplemental compensation arrangements with certain carriers based on other circumstances, including without limitation, the aggregate volume of premiums paid to, or policies issued by, a particular carrier. Frenkel's compensation agreements with the insurance companies with which it does business are available for its policyholders' review, and a list of the carriers with any contingent/supplemental compensation agreements from 2002 forward is posted at www.frenkel.com.

**41**

 

**Frenkel&Co., Inc.**
International Insurance Brokers Est. 1878

# Official Equity Committee in the Chapter 11 Case of Estate Financial Mortgage Fund, LLC

## Proposal of Errors & Omissions Liability Insurance

*February 10, 2009*

Presented by:
Michael S. Dow, Senior Vice President
Maura Klembecki, Account Executive

# Frenkel & Co., Inc.
## International Insurance Brokers
License Number 0098170

725 S. Figueroa Street 22nd Floor
Los Angeles, CA 90017
Telephone: (213) 787-1100
Fax: (213) 787-1167



EXHIBIT 5                                    31

  **Frenkel&Co., Inc.** 
International Insurance Brokers Est. 1878

2/10/09

## PROPOSAL OF INSURANCE – PROFESSIONAL LIABILITY

**NAMED INSURED:**            Official Equity Committee in the Chapter 11 Case of Estate
                             Financial Mortgage Fund, LLC

**MAILING ADDRESS:**         c/o Michaelson, Susi, & Michaelson
                             7 West Figueroa Street, 2nd Floor
                             Santa Barbara, CA 93101-3191

---

**INSURER:**                 Navigators Specialty Insurance Company
                             Non-admitted carrier
                             (Financial Strength Rating **A, X** by A.M. Best Co.)

**COVERAGE:**                Errors & Omissions Policy Form NSIC MPL (01/09)
                             Claims Made Form* (Specimen form attached)

***This policy applies only to those *claims* that are first made against the Insured and reported in
writing to the Company during the policy period or extended reporting period, if any.  Claim
expenses are within and reduce the Limit of Liability.**

**POLICY TERM:**             Annual, TBD
                             Effective both days at 12:01 A.M. at the address above

**PROFESSIONAL SERVICES:**

Representing the members of the committee who are representing the interests of the
creditors holding equity investments in Estate Financial Mortgage Fund, LLC by performing
such duties provided for in 11 U.S.C. 1102 (b) (3) and 1103 (c).

**ENDORSEMENTS:**

- Amendatory Endorsement (Specimen endorsement attached)
- OFAC Endorsement (Specimen endorsement attached)

**LIMITS OF LIABILITY:**

| Limit of Liability<br>Each claim/Aggregate<br>(inclusive of Defense Costs,<br>Charges & Expenses) | Deductible<br>(Each Claim-including<br>costs & claim expenses) | Annual<br>Premium | CA Tax &<br>stamping fee<br>(3.225%) | TOTAL<br>ANNUAL<br>PREMIUM |
|---|---|---|---|---|
| $1,000,000 / $1,000,000 | $5,000 | $ 5,000 | $161.25 | $ 5,161.25 |
| $3,000,000 / $3,000,000 | $5,000 | $15,000 | $483.75 | $15,483.75 |

**RETROACTIVE DATE:**        Inception of Policy

**NOTICE OF CANCELLATION/NON-RENEWAL:**
        30 Days Notice of Cancellation or Non-Renewal, except 10 days for non-payment.

*Frenkel & Co., Inc.   License No.: 0098170*

## Frenkel&Co.,Inc.
International Insurance Brokers Est. 1879



**Note:** This proposal is intended to present a brief overview of the coverages being offered by the policies listed. It is not intended to represent the full and complete insurance policy contract nor is it intended to provide coverage excluded from the policy itself. Refer to the policy for complete definitions, conditions, limitations and exclusions.

## DISCLOSURE OF COMPENSATION ARRANGEMENTS

Frenkel & Co., Inc. ("Frenkel") secures and otherwise facilitates the purchase of insurance coverage for its policyholder clients from a variety of insurance carriers and group benefits providers (collectively "carriers") and sometimes engages the services of other entities in connection with the issuance of such coverage. In most instances, Frenkel is primarily compensated for the insurance brokerage services that it provides to its policyholder clients through commission payments that are based on the premium charged, and paid for, by the issuing market for each policy secured for Frenkel's clients. The percentage of these commissions varies by market and policy type.

In addition, Frenkel has entered into contingent compensation arrangements with markets based on circumstances, including without limitation, the overall volume of premiums paid to or policies issued by or through a particular market for Frenkel's clients; the overall growth, persistency and/or retention of the premiums paid by Frenkel's clients to or through a particular market; and, in certain cases, the profitability of the total premium (i.e., claims history on the coverage) paid by Frenkel's clients to or through a particular market.

A list of all of the carriers from which Frenkel has received contingent compensation since 2002 can be accessed electronically by actual and prospective policyholder clients at www.frenkel.com.

Moreover, documentation currently in Frenkel's possession evidencing Frenkel's current compensation agreements with the aforementioned carriers is available for all policyholders' review at Frenkel's headquarters; however, if those policyholders or their representatives have any additional questions or require any other information regarding any of the compensation received by Frenkel for any of its insurance brokerage services, please do not hesitate to contact your account executive.

 

## Frenkel&Co.,Inc.
### International Insurance Brokers Est.1878

**Official Equity Committee in the Chapter 11 Case of**
**Estate Financial Mortgage Fund, LLC**

### Errors & Omissions Liability Insurance

**Effective: TBD**

Proposal of Insurance

### Authorization to Bind Coverage

**I/we authorize Frenkel & Co., Inc. to bind Errors & Omissions Liability Insurance Coverage for Official Committee General Unsecured Creditors for Estate Financial, Inc. as outlined in this Proposal of Insurance dated February 10, 2009.**

**Please provide a premium finance agreement (finance quote).    Yes ☐    No ☐**

Authorized By:_____    Date:_____
              Signature

Print Name: _____    Title: _____

**Please fax and mail this page to:**

**Frenkel & Co., Inc.**
**Attention: Michael Dow**
**725 South Figueroa Street, Suite 2200**
**Los Angeles, CA 90017**
**Tel: (213) 787-1100**
**Fax: (213) 787-1167**

**Thank you.**

34

**ENDORSEMENT #**

This endorsement, effective 12:01 a.m.,:
forms a part of Policy No.:
Issued to:
By:

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## ERRORS AND OMISSIONS POLICY

In consideration of the premium charged, it is understood and agreed that the terms of the policy are changed as follows:

**Section III. DEFINITIONS, Insured.** Delete items 1, 3 and 4.

**Section IV. Exclusions.**

Item A. is deleted and replaced with: "Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**;"

Item F. Delete item 1 and replace with: "Breach of fiduciary duty, responsibility or obligation of the **Insured** in connection with any 'employee pension benefit plan' or 'employee welfare benefit plan' of the **Insured** or any employer affiliated with the **Named Insured** through common ownership or control and their beneficiaries as those terms are defined in the ERISA code, or any regulation or order issued pursuant thereto, or any similar provisions of any state or federal statute or common law;"

Add new Exclusions:

L.      Based on or arising out of any loss sustained by an **Insured** as a beneficiary or distribute of any trust or estate;

M.      Based on or arising out of any **Insured's** activities as a partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business entity;

N.      Based on or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, amendments, rules or regulations promulgated there under or comparable state laws or statutes.

All other provisions of this policy remain unchanged.

### U.S. TREASURY DEPARTMENT'S
### OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
### ADVISORY NOTICE TO POLICY HOLDERS

No coverage is provided by this Policy Holder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

As "Specially Designated National and Blocked Persons". This list can be located on the United States Treasury's web site-http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Navigators**
*Insuring A World In Motion*

One Penn Plaza
New York, NY 10119
USA
www.navg.com

NAV OFAC

**PES** 12424 WILSHIRE BLVD #1030
Los Angeles, CA 90025
(310)820-1023 FAX: (310)820-1032

**Premium Financing Specialists of California, Inc.**

License # 973 9750

| | | | AGENT (Name & Place of business) | INSURED (Name and residence or business) |
|---|---|---|---|---|
| **A** | CASH PRICE (TOTAL PREMIUMS) | $15,483.75 | FRENKEL OF CALIFORNIA INC | Estate Financial Mortgage Fund, LLC |
| **B** | CASH DOWN PAYMENT | $4,233.75 | 725 S FIGUEROA STREET SUITE 2200 | c/o Michaelson, Susi & Michael 7 West Figueroa St., 2nd floor |
| **C** | PRINCIPAL BALANCE (A MINUS B) | $11,250.00 | LOS ANGELES    CA    90017 (213)787-1100 | Santa Barbara    CA    93101-3191 (805)965-1011 |

**LOAN DISCLOSURE**

Quote Number: 1833199

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.95 % | $471.51 | $11,250.00 | $11,721.51 |

| YOUR PAYMENT SCHEDULE WILL BE | | | | ITEMIZATION OF THE AMOUNT FINANCED: |
|---|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | MONTHLY | THE FULL AMOUNT FINANCED WAS PAID TO THE INSURANCE COMPANY (COMPANIES). |
| 9 | $1,302.39 | Beginning: | 3/11/2009 | |

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed as provided in Sec. 18635, California Statute. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TRMS | PREMIUM |
|---|---|---|---|---|---|
| NY09MPL570634N C | 2/11/2009 | NAVIGATORS SPECIALTY INSURANCE CO | PRFLIA | 12 | $15,000.00 |
| | | TAXES | | | $483.75 |

| (CHECK CORRECT BOX) | ☐ PERSONAL | ☑ COMMERCIAL | | TOTAL $ | $15,483.75 |
|---|---|---|---|---|---|

The undersigned insured directs Premium Financing Specialists of California, (herein, referred to as "Lender") to pay the premiums on the policies described above. In consideration of such premium payments, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the provisions herein set forth.
The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Understands that the finance charge begins to accrue as of the earliest policy effective date.
3. Agrees to all provisions set out above and on page 2.

**FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

4. Irrevocably appoints Lender attorney-in-fact of the insured with full power of substitution and full authority upon any default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured all insurance documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
NOTICE:
A. Do not sign this before you read the writing on the second page, even if otherwise advised.
B. Do not sign this if it contains any blank lines.
C. You are entitled to an exact copy of any agreement you sign.
D. You have the right to pay in advance the unpaid balance due under this agreement and you may be entitled to a partial refund of the finance charge.

Signature of Insured or Authorized Agent    2/18/09 DATE
The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____    _____
SIGNATURE OF AGENT    DATE

(08/07) Copyright 1988 Premium Financing Specialists, Inc.

02/18/09    EQUOTE - CAPPUR

**EXHIBIT  6**

**37**

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** Agrees that this agreement shall be effective when written acceptance is mailed to insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured will pay Lender a cancellation charge of $15, if permitted, up to the limit specified by law. If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY, NV, and VT)

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee, if permitted by law, of $5 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that Lender has no liability to the insured if the policy is not reinstated.

**11. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's successors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). The agent or broker executing this agreement has a financial interest in the premium finance company that you have contracted with and as a result may receive financial benefit from arranging the financing of your insurance premium. If you have any questions about the benefits the agent/broker receive you should contact the agent/broker.

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY)

**15. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender's gross negligence or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

### AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtedness of the insured.

38

| In re: Estate Financial, Mortgage Fund, LLC, a California Limited Liability company | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER  9:08-bk-11535-RR |
| In re: Estate Financial, Inc. | CASE NUMBER  9:08-bk-11457-RR |
| Debtor(s). | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367**

The foregoing document described **JOINT MOTION OF THE COMMITTEES FOR ORDER AUTHORIZING REIMBURSEMENT OF EXPENSES OF THE COMMITTEES ARISING FROM  PREMIUMS ASSOCIATED WITH ERRORS AND OMISSION INSURANCE POLICIES FOR THE COMMITTEES; DECLARATIONS IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>March 4, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On <u>March 4, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____
*personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 4, 2009 | Nikola A. Fields | |
|---|---|---|
| Date | Type Name | Signature |

**39**

1

## SERVICE LIST
## In re ESTATE FINANCIAL, INC.; Case Nos.:
## 9:08-bk-11457-RR  &  9:08-bk-11535-RR

2

3

4

| **Presiding Judge**<br>Hon. Robin L. Riblet<br>United States Bankruptcy Court<br>1415 State Street, Suite 103<br>Santa Barbara, CA 93101-2511<br>*VIA U.S. MAIL* | |
|---|---|
| Debtor<br>Estate Financial Inc.<br>806 9th Street, Suite 1A<br>Paso Robles, CA 93446<br>*VIA U.S. MAIL* | Counsel for EFI, Inc. Trustee<br>Samuel R. Maizel, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., Suite 1100<br>Los Angeles, CA 90067<br>Email: smaizel@pszjlaw.com<br>*VIA NEF* |
| Former Debtor's Counsel<br>William C. Beall, Esq.<br>Beall and Burkhardt<br>1114 State Street, Suite 200<br>Santa Barbara, CA 93101<br>Email: artyc@aol.com<br>*VIA NEF* | Chapter 11 Trustee For EFI<br>Thomas P. Jeremiassen<br>LECG LLC<br>2049 Century Park East, Ste. 2300<br>Los Angeles, CA 90067<br>*VIA U.S. MAIL* |
| Counsel to Brad Sharp<br>David M. Poitras, Esq.<br>Thomas Geher, Esq.<br>Jeffer, Mangels, Butler & Marmaro<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br>Email: tmg@jmbm.com; dpoitras@jmbm.com<br>*VIA NEF* | Chapter 11 Trustee for EFMF<br>Bradley N. Sharp<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>*VIA U.S. MAIL* |
| Office of the United States Trustee<br>United States Trustee<br>Attn: Brian Fittipaldi<br>21051 Warner Center Lane, Suite 115<br>Woodland Hills, CA 91367<br>Email: brian.fittipaldi@usdoj.gov<br>*VIA NEF* | U.S. Trustee's Counsel<br>Office of the U.S. Trustee<br>Brian D. Fittipaldi<br>128 E. Carrillo Street<br>Santa Barbara, CA 93101<br>Email: brian.fittipaldi@usdoj.gov<br>*VIA NEF* |
| Committee Member<br>Jim W. Davis<br>PO. Box 15<br>Lemoore, CA 93245<br>*VIA U.S. MAIL* | Committee Member<br>Thomas K. Schultheis<br>4455 Via Bendita<br>Santa Barbara, CA 93110<br>*VIA U.S. MAIL* |

**40**

| Committee Member<br>Donna and Robert Berg Foundation<br>c/o Donna Berg<br>5161 Vineyard Drive<br>Paso Robles, CA 93446<br>*VIA U.S. MAIL* | Committee Member<br>John G. Henry, MD. – Pension Fund<br>c/o John G. Henry, M.D.<br>1905 Hidden Valley Road<br>Templeton, CA 93465<br>*VIA U.S. MAIL* |
|---|---|
| Committee Member<br>Nancy Trotter, Trustee of the Nancy Lee<br>Missakian Trotter Trust<br>c/o Nancy Lee Missakian Trotter<br>3901 Laguna Blanca Drive<br>Santa Barbara, CA 93110<br>*VIA U.S. MAIL* | Committee Member<br>Marjorie L. Jacobsen,<br>Trustee of the Marjorie LaVerne Jacobsen<br>2002 Revocable Trust<br>261 Leighton<br>Cambria, CA 93428<br>*VIA U.S. MAIL* |
| Committee Member<br>Clifford Andreas Munk<br>Trustee of the Clifford Andreas Munk and<br>Lois Munk Revocable Trust<br>c/o Clifford Munk<br>P.O. Box 433<br>Paso Robles, CA 93447<br>*VIA U.S. MAIL* | |

*108326.doc*

**41**